Keeley O. Cronin (67323804)
Paul Karlsgodt (*pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, Colorado 80202
Tel: (303) 861-0600
Fax: (303) 861-7805
Emails: kcronin@bakerlaw.com
pkarlsgodt@bakerlaw.com

Pamela C. Garman
**CROWLEY FLECK PLLP**
490 North 31st Street, Ste 500
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 256-8526
pgarman@crowleyfleck.com

Alexander Vitruk (*pro hac vice* forthcoming)
**BAKER & HOSTETLER LLP**
999 3rd Avenue, Suite 3900
Seattle, Washington 98104
Tel: (206) 332-1380
Fax: (206) 624-7317
Email: avitruk@bakerlaw.com

*Attorneys for Defendant Billings Clinic*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| LYDIA BRESTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BILLINGS CLINIC,<br><br>Defendant. | CASE NO. 1:26-CV-00061-BLG-KSL<br><br>**DEFENDANT BILLINGS CLINIC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** |

# TABLE OF CONTENTS


I. INTRODUCTION .....1

II. PLAINTIFF'S ALLEGATIONS .....2

III. LEGAL STANDARD .....4

IV. ARGUMENT .....5

A. Plaintiff Lacks Concrete Injury to Establish Article III Standing .....5

B. Plaintiff Fails to State a Claim for Violation of the ECPA (Count I). .....11

1. Plaintiff Fails to Allege Any Unlawful Interception. .....11

2. Plaintiff Fails to Allege any Plausible Interception of "Contents." .....14

C. Plaintiff Fails to State a Claim for Negligence (Count II). .....17

D. Plaintiff Fails to State a Claim for Unjust Enrichment (Count III) .....20

E. Plaintiff Fails to State a Claim for Violation of the MHCIA (Count IV). .....21

F. Plaintiff Fails to State a Claim for Invasion of Privacy (Count V) .....23

G. Plaintiff Fails to State a Claim for Negligence *Per Se* (Count VI). .....27

H. Plaintiff Fails to State a Claim for Violation of Montana's Constitutional Right to Privacy (Count VII). .....28

V. CONCLUSION .....28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Assn. v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ....................8, 19, 23, 25

*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ....................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 16

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024), *on reconsideration in part*, No. 5:23-cv-02092-JGB-DTB, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ....................11, 16, 19

*Beckington v. Am. Airlines, Inc.*,
926 F.3d 595 (9th Cir. 2019) ....................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................5

*Berger v. Cable News Network Inc.*,
No. 1:94-cv-00046-BLG-JDS, 1996 WL 390528 (D. Mont. Feb. 26, 1996) ....................13

*Brown v. Jacobsen*,
590 F. Supp. 3d 1273 (D. Mont. 2022)....................5

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011) ....................16

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ....................6

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ....................4

*Creel v. Loy*,
524 F. Supp. 3d 1090 (D. Mont. 2021)....................17

*Deering v. CenturyTel, Inc.*,
No. 1:10-cv-00063-BLG-RFC, 2011 WL 1842859 (D. Mont. May 16, 2011)....................25

*Deming v. Ciox Health, LLC*,
No. 20-35744, 2022 WL 605691 (9th Cir. Mar. 1, 2022)....................21

*Doe 1 v. Chestnut Health Sys., Inc.*,
No. 1:24-cv-01475-JEH-RLH, 2025 WL 1616635 (C.D. Ill. June 6, 2025)....................14

*Doe v. Genesis Health Sys.*,
No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025)....................14

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 3:23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....................12

*Doe v. MKS Instruments, Inc.*,
No. 8:23-cv-00868-CJC-KES, 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023)....................10

*Doe v. Talkiatry Mgmt. Servs., LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026)....................13

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015)....................15, 19

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011)....................11

*Garmon v. County of Los Angeles*,
828 F.3d 837 (9th Cir. 2016)....................17

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014)....................26

*Hubbard v. Google LLC*,
No. 5:19-cv-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ....................25

*In re iPhone Application Litig*.,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................26

*Katz-Lacabe v. Oracle Am., Inc*.,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................13

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................24

*Lakes v. Ubisoft, Inc*.,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ....................13

*Lokey v. Breuner*,
358 Mont. 8 (2010) ....................19

*Low v. LinkedIn Corp*.,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................26

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................4, 5

*Maghoney v. Dotdash Meredith, Inc*.,
No. 3:24-cv-02394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) ....................9

*Mid Continent Cas. Co. v. Engelke*,
337 F. Supp. 3d 933 (D. Mont. 2018), *aff'd*, 842 F. App'x 25 (9th Cir. 2020) ....................17, 27

*Mid-Century Ins. Co. v. Windfall, Inc*.,
No. 9:15-cv-00146-M-DLC, 2016 WL 2992114 (D. Mont. May 23, 2016) ....................23, 26

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) ....................16

*Miller v. Great Falls Athletic Club, LLC*,
357 Mont. 562 (2010) ....................28

*Mortensen v. Bresnan Commc'n, L.L.C.*,
No. 1:10-cv-00013-BLG-RFC, 2010 WL 5140454 (D. Mont. Dec. 13, 2010) ....24, 25

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ....11

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ....11, 14, 15, 23, 24

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....12

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....6, 8, 10

*Prather v. Bank of Am., N.A.*,
No. 9:15-cv-00163-M-DLC, 2017 WL 1929474 (D. Mont. May 9, 2017) ....24

*Quinn v. Meadow Lark Transp., Inc.*,
No. 1:22-cv-00055-BLG-SPW-TJC, 2025 WL 2445530 (D. Mont. Aug. 8, 2025), *report and recommendation adopted*, No. 1:22-cv-00055-BLG-SPW-TJC, 2025 WL 2439138 (D. Mont. Aug. 25, 2025) ....20

*Roe, et al. v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) ....11

*Saeedy v. Microsoft Corp.*,
No. 2:23-cv-01104-BJR, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ....25

*Simms v. Schabacker*,
377 Mont. 278 (2014) ....21

*Smith v. Facebook, Inc.*,
745 Fed. App'x. 8 (9th Cir. 2018); 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017)....8, 9, 15

*Spreadbury v. Bitterroot Pub. Libr.*,
No. 9:11-cv-00064-M-DWM-JCL, 2011 WL 4639917 (D. Mont. July 28, 2011), *report and recommendation adopted*, No. 9:11-cv-00064-M-DWM-JCL, 2011 WL 4708044 (D. Mont. Oct. 4, 2011) ..................27

*Sussman v. Am. Broad. Cos. Inc.*,
186 F.3d 1200 (9th Cir. 1999) ..................12, 13

*Teeter v. Easterseals-Goodwill N. Rocky Mountain, Inc.*,
No. 4:22-cv-00096-GF-BMM, 2023 WL 2330241 (D. Mont. Mar. 2, 2023) ..................20, 23

*Towles v. Dzurenda*,
735 Fed. App'x. 440 (9th Cir. 2018) ..................18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..................5, 8

*In re U.S. Vision Data Breach Litig.*,
732 F. Supp. 3d 369 (D.N.J. 2024)..................18

*Warner v. Montana*,
No. 9:19-cv-00103-DLC-KLD, 2019 WL 8754949, at *12 (D. Mont. Nov. 18, 2019), *report and recommendation adopted*, No. 9:19-cv-00103- DLC-KLD, 2020 WL 1429850 (D. Mont. Mar. 24, 2020) ..................17

*Williams v. TMC Health*,
No. 4:23-cv-00434-TUC-SHR, 2024 WL 4364150 (D. Ariz. Sept. 30, 2024) ..................19, 24

*Wilson v. Rater8, LLC*,
No. 3:20-cv-01515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ..................10

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025)..................14

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..................14, 15, 16

**Statutes**

18 U.S.C. § 2510(8) ....................................................................................14

18 U.S.C. § 2511(2)(d)...................................................................................11

Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. ..................4, 11

Federal Wiretap Act, 18 U.S.C. §§ 2510-2523 (2024)..........................11, 14, 15, 17

MCA § 50-16-803 ........................................................................................23

MCA § 50-16-805 ........................................................................................21

MCA § 50-16-811 ........................................................................................21

MCA § 50-16-812 ....................................................................................21, 22

Mont. Code Ann. § 46-4-301 ...........................................................................27

Montana Health Care Information Act, Mont. Code Ann. § 50-16-801,
*et seq*. ....................................................................................4, 21, 22, 23, 27

**Other Authorities**

Fed. R. Civ. P. Rule 12(b)(1) .............................................................................4

Fed. R. Civ. P. Rule 12(b)(6) .............................................................................5

Mont. Const. art. II, § 10.............................................................................4, 28

Defendant Billings Clinic ("Billings Clinic" or "Defendant"), by and through its undersigned attorneys, files this Motion to Dismiss, seeking to dismiss the claims in Plaintiff's Class Action Complaint (the "Complaint"). Billings Clinic respectfully requests oral argument pursuant to the local rules.

## I. INTRODUCTION

Plaintiff's Complaint is among numerous putative class action complaints that have been filed against healthcare providers nationwide regarding the ubiquitous practice of using third-party analytics technologies on their websites. Plaintiff claims that Billings Clinic violated her privacy rights by allegedly embedding third-party analytics tools: Google Analytics, Google DoubleClick, and StackAdapt Pixel (collectively, the "Pixels") on its ***public-facing website***, *https://www.billingsclinic.com/* (the "Website"), accessible to ***anyone***.

Plaintiff claims that the Pixels caused her and putative class members' personally identifiable information ("PII") and protected health information ("PHI") to be transmitted to third parties including Google, LLC ("Google") and StackAdapt, Inc. ("StackAdapt"). Plaintiff further contends that the ***mere browsing activity*** allegedly transmitted to third parties via the Pixels constitutes PHI and PII.

Courts throughout the country have been dismissing virtually identical claims against healthcare providers where, as here, the allegations are vague and conclusory. Plaintiff alleges, in sweeping and abstract terms, how internet tracking

technologies might operate, but pleads no facts about how they actually operated during her own visits to this free, public Website. She does not allege which pages she accessed, what specific information, if any, was transmitted to third parties, or how such transmissions caused her concrete injuries. Instead, Plaintiff attempts to convert generalized descriptions of internet technology into statutory violations. This case rests on a fundamental mismatch between theory and facts. The law does not permit such conjectural pleading to proceed past a motion to dismiss.

## II. <u>PLAINTIFF'S ALLEGATIONS</u>

Defendant Billings Clinic is a nonprofit healthcare system based in Montana that operates and controls the Website. Compl. ¶¶ 5, 36. Plaintiff alleges that software implemented on the Website permits information to be transmitted from a user's web browser to third parties. *See* Complaint, generally.

Plaintiff explains the possible functioning of Pixels in hypotheticals. Plaintiff's allegations concerning Pixels describe general capabilities rather than facts tied to Plaintiff's own Website interaction(s). *Id*. ¶¶ 49-98. She pleads no facts showing any of *her* information was entered into the Website and allegedly transmitted to third parties. Notably, Plaintiff filed Exhibit A to the Complaint under seal because it purportedly contained Plaintiff's protected health information; yet, the Exhibit purportedly contains "long-URLs ***or substantially similar URL[s]***". *Id.* ¶ 225 (emphasis added). Even for a document purportedly containing Plaintiff's PHI,

Plaintiff would not or could not confirm the information therein to be specific to her. She also claims Billings Clinic disclosed her IP address, cookie identifiers, device identifiers, and account numbers. *Id.* ¶ 226.

Plaintiff further pleads that Billings Clinic failed to obtain her consent before transmitting website activity to third parties. *Id.* ¶¶ 10, 21, 35, 52, 95, 124, 227, 228, 247, 267, 304. Yet, Plaintiff cites to Billings Clinic's Privacy Policy, which "represent[s] that information [will be] shared for advertising purposes," that Billings Clinic "collect[s] and log[s] the IP address of all visitors to [the public] Site," and that Billings clinic "may sell, share, or rent this aggregate information to third parties." *Id.* ¶ 120. "The Privacy Policy also acknowledges that Billings Clinic uses 'cookies' on its websites and that Billings Clinic's 'sponsors and advertisers and their advertising servers ('Ad Servers') may use . . . those cookies to collect non-personal information." *Id.* ¶ 121. After acknowledging these disclosures, Plaintiff pleads no facts as to whether she accepted or denied the Privacy Policy while proceeding to use the Website, apparently with full notice of the disclosures therein.

Beyond generally claiming to use the Website "on numerous occasions," Plaintiff's only specific allegation is that after using the Website to search for an ophthalmologist, she began receiving targeted advertisements related to ophthalmology. *Id.* ¶¶ 223, 228. Yet, Plaintiff fails to identify a single advertisement she allegedly received, provide any dates, or explain how any ads were targeted. In

fact, Plaintiff implicitly admits she has zero records showing that she was targeted as a result of using the Website. *Id.* ¶ 229. There is no plausible basis for this conclusory assertion that the ads resulted from Billings Clinic's alleged disclosure of information to Google or StackAdapt.

Despite the foregoing, Plaintiff asserts seven causes of action: (1) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq*.; (2) negligence; (3) unjust enrichment; (4) violation of the Montana Health Care Information Act ("MHCIA"), Mont. Code Ann. § 50-16-801, *et seq*.; (5) invasion of privacy; (6) negligence *per se*; and (7) violation of Montana's Constitutional Right to Privacy, Mont. Const. art. II, § 10. Compl. ¶ 34. Plaintiff asserts these causes of action on behalf of herself and a putative class of "[a]ll people who used Billings Clinic's Website and who had their Private Information disclosed or transmitted to Google or any other unauthorized third party." *Id.* ¶ 241.

## III. LEGAL STANDARD

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of an action for lack of subject-matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010). The plaintiff bears the burden of establishing standing which requires an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation marks

omitted). The injury must be "fairly traceable to the defendant's allegedly unlawful conduct," and it must be "likely to be redressed by the requested relief." *Id*. at 590.

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'" *Beckington v. Am. Airlines, Inc*., 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009)). Factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

## IV. ARGUMENT

### A. Plaintiff Lacks Concrete Injury to Establish Article III Standing.

To establish Article III standing, Plaintiff must show she suffered an injury in fact that is both "concrete and particularized" as well as "actual or imminent." *Brown v. Jacobsen*, 590 F. Supp. 3d 1273, 1283 (D. Mont. 2022) (citing *Lujan*, 504 U.S. at 560-61). The Supreme Court has explained that "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 427 (2021). A harm is "concrete" only if the injury bears a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit. *Id*. at 424.

To establish Article III standing in privacy cases, Plaintiff must not only "identify [the] specific personal information" that she alleges was intercepted by a third party, but how the alleged interception "implicates a protectable privacy interest." *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023).

The Ninth Circuit recently reaffirmed the point in *Popa*: allegations that a website deployed third-party tracking—capturing dozens of user interaction types—still did not establish a concrete injury absent facts tying the alleged collection to a traditionally recognized privacy harm. *Popa v. Microsoft Corp.*, 153 F.4th 784, 789-94 (9th Cir. 2025).

Plaintiff's Complaint falls even shorter. First, Plaintiff does not identify any specific personal information of *hers* that was intercepted or disclosed, let alone facts showing any alleged collection implicates a protectable privacy interest. Instead, the Complaint lists categories of data that *might* be collected in theory—"URLs," "buttons," "links," "pages," "tabs," "search terms," "forms," "IP addresses," "cookie identifiers," "device identifiers," and "account numbers." Compl. ¶¶ 89, 226. Those allegations are generic. They do not plead what was actually collected from Plaintiff during her own alleged visits, "most recently in May 2026," and they therefore do not establish a concrete injury in fact. *Id.* ¶ 223.

Plaintiff's description of *her* own Website interaction is fatally sparse. She alleges only that "[d]uring the relevant time period," she used the Website "to schedule appointments, request information on specific medical services, research providers, review financial assistance resources, and login to Patient Connect." *Id.* ¶ 225. Critically, she then alleges that "Billings Clinic intercepted and transmitted to third parties via Tracking Tools at least the long-URLs ***or substantially similar*** URL communications" identified in Exhibit A. *Id.* (emphasis added). The qualifier underscores the fundamental problem with the allegations. The Complaint and exhibit are not pled as a firsthand account of what Plaintiff actually entered or what was specifically transmitted during her Website visits. The Complaint provides no factual context identifying what information Plaintiff typed or selected, whether any allegedly sensitive "medical" information appeared in any URL actually tied to her, or whether any allegedly identifying data (such as an email address or phone number) was transmitted at all.

The screenshots in the Complaint underscore the same pleading failure. None are tied to Plaintiff's own use of the Website, and none identify any sensitive information belonging to her. *See, e.g.,* Figure 1 (web browser screenshot untethered to Plaintiff); Figure 2 (code snippet that purportedly depicts the tracking activity that occurs when a user searches the Website, yet the Complaint offers no basis to infer that this snippet reflects Plaintiff's interaction with the Website); Figures 3 and 4

(purporting to show "the tracking activity that occurs when [a] physician profile [is] shown," but avoids providing facts about Plaintiff's own interactions). *Id.* ¶ 83-86.

Plaintiff otherwise alleges she searched for an ophthalmologist and then began receiving targeted advertisements related to ophthalmology." *Id.* ¶ 228. But courts do not infer medical status from a public-facing search or appointment inquiry. *Am. Hosp. Assn. v. Becerra*, 738 F. Supp. 3d 780, 803 (N.D. Tex. 2024). And the Complaint never pleads what Plaintiff entered, what was transmitted from her Website visits, or how any transmission would reveal an individualized medical fact about her. Without those plaintiff-specific facts, Plaintiff cannot plausibly allege a concrete privacy injury under *TransUnion* and *Popa*.

Ninth circuit district courts are in accord. In *Smith v. Facebook, Inc.*, the court explained that although plaintiffs alleged Facebook collected URLs which "point to pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information," because these pages "contain general health information that is accessible to the public at large," the collection of this data did not relate to "the past, present, or future physical or mental health or condition of an individual." 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). In affirming *Smith*, the Ninth Circuit stated that "[i]nformation available on publicly accessible websites stands in stark

contrast to the personally identifiable patient records and medical histories protected by [HIPAA]—information that unequivocally provides a window into an individual's personal medical history." *Smith v. Facebook, Inc.*, 745 Fed. App'x. 8, 9 (9th Cir. 2018). This is because "[t]he data show only that Plaintiffs searched and viewed publicly available health information that cannot, in and of itself, reveal details of an individual's health status or medical history." *Id.* Likewise, here, Plaintiff's allegations that she searched for physicians on a publicly accessible tool does not reveal any details of her medical information.

In *Maghoney v. Dotdash Meredith, Inc.*, another court held that a plaintiff who merely searched for sensitive health-related terms concerning chlamydia, genital warts, and other sexually transmitted infections failed to allege a concrete injury sufficient for Article III standing. No. 3:24-cv-02394-AJB-BJW, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026). The court explained that those searches failed to establish that the information was tied to the plaintiff's own medical history. *Id.* The court credited Dotdash's argument that "[a]nyone from a schoolteacher writing a lesson plan for a sex-ed class or a researcher looking to analyze potential findings could enter these searches into an informational health website" and emphasized that DotDash's website was not a patient portal. *Id.*

The same reasoning should apply with equal force here. Plaintiff's allegation that she searched for an ophthalmologist and the URLs shown in Plaintiff's Exhibit

A to the Complaint contain no information about the medical conditions of the hypothetical Website visitors (let alone her conditions), nor do they indicate that she ever attended an appointment at Billings Clinic or received treatment from a doctor at Billings Clinic. At most, Plaintiff's Complaint reflects that someone visited webpages on a public website. At bottom, Plaintiff's button-clicks on the public Website are not medical information. *See Doe v. MKS Instruments, Inc.*, No. 8:23-cv-00868-CJC-KES, 2023 WL 9421115, at *2 (C.D. Cal. Nov. 3, 2023) (Allegation that plaintiff gave defendant "medical information" including "information about disabilities, health and medical conditions," without specific details of what information defendant possessed, was not sufficient to allege defendant possessed plaintiff's medical information); *Wilson v. Rater8, LLC*, No. 3:20-cv-01515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021) (name, phone number, treating physician names, treatment appointment information and discharge dates and times did not constitute "medical information").

Plaintiff does not provide facts to support her conclusory allegation that Billings Clinic disclosed her PHI and likewise does not describe any other "Private Information" she provided to Defendant on its webpages. Thus, Plaintiff does not allege an injury with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," and therefore alleges no injury sufficient to confer standing. *Popa*, 153 F.4th at 789.

**B. <u>Plaintiff Fails to State a Claim for Violation of the ECPA (Count I).</u>**

Count I fails for multiple independent reasons and should be dismissed.

*1. Plaintiff Fails to Allege Any Unlawful Interception.*

The Wiretap Act does not impose liability on a party to the communication. 18 U.S.C. § 2511(2)(d). A website operator cannot "intercept" communications sent to itself; it cannot eavesdrop on its own conversations. *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 713 (N.D. Cal. 2011). That principle is dispositive because the interactions Plaintiff describes are, by her own account, communications between a user's browser and Billings Clinic. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016); *see also Roe, et al. v. Amgen Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024).

Ninth Circuit district courts have made clear that users of a healthcare provider's website cannot state a claim under the Wiretap Act when the provider was the intended recipient of any alleged website communications and, therefore, could not have intercepted such communications. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) ("the party exception to Plaintiffs' [Wiretap Act] . . . claim[] exempts Defendants from liability"); *accord. Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1095 (W.D. Wash. 2024). Billings Clinic is identically situated.

Plaintiff attempts to invoke the "crime-tort exception," which applies only where the interception was made for the purpose of committing a criminal or tortious act. Compl. ¶¶ 276-277. "Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos. Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (internal quotation marks omitted). Plaintiff thus must adequately allege Billings Clinic "had an illegal or tortious purpose" that is separate and distinct from the collection and disclosure of Plaintiff's communications. *Id.* at 1203; *see also Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording.").

Here, Plaintiff alleges no separate unlawful purpose. Instead, Plaintiff broadly asserts—without factual support—that the crime-tort exception applies because the same interception allegedly violated various laws, including the Montana Constitution, HIPAA, Montana statutes, and invasion of privacy. Compl. ¶¶ 273-74. But that is contrary to *Sussman*, which makes clear that "the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc.*, No. 3:23-cv-02865-EMC, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (violation of HIPAA did not satisfy crime-tort exception). Even where an interception "may well have been a tortious invasion of privacy under state law," it is not a separate illegal

or tortious purpose that would trigger the crime-tort exception. *Sussman*, 186 F.3d at 1203; *see also Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1210 (C.D. Cal. 2026) ("[M]ere collection of personal information for market research and advertising was not for the purpose of committing a crime or tort."). The same principle applies here. Plaintiff alleges, at most, routine data collection associated with advertising or analytics, not conduct undertaken for the purpose of committing a crime or tort.

Plaintiff actually alleges the opposite of a tortious or illegal purpose, claiming that Billings Clinic transmitted communications "for advertising, analytics, and marketing purposes." Compl. ¶ 15. A district court recently held that where "purpose of the interception was not 'to perpetuate torts on millions of Internet users, but to make money,'" the crime-tort exception to the party-exception is not satisfied. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (same holding); *Berger v. Cable News Network Inc.*, No. 1:94-cv-00046-BLG-JDS, 1996 WL 390528, at *3 (D. Mont. Feb. 26, 1996) (finding no unlawful purpose where "recordings were made for the purpose of producing a news story and for the defendants' commercial gain.").

Likewise, courts throughout the Ninth Circuit and the country have held that alleged transmissions of communications to third parties "for purposes of targeting

advertising to [d]efendant's California website users" were "insufficient to implicate the crime-tort exception." *Zarif v. Hwareh.com, Inc.,* 789 F. Supp. 3d 880, 896 (S.D. Cal. 2025) (dismissing Wiretap Act claim); *see also Nienaber*, 733 F. Supp. 3d at 1096 (plaintiff failed to plead "a tortious or criminal use of the acquired communications separate from their recording, interception, or transmission"); *accord Doe 1 v. Chestnut Health Sys., Inc.*, No. 1:24-cv-01475-JEH-RLH, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025); *Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025).

### 2. *Plaintiff Fails to Allege any Plausible Interception of "Contents."*

Plaintiff's Wiretap Act claim further fails because Plaintiff has not pled facts showing that the "contents" of any communications were disclosed to third parties from Billings Clinic. Under the Wiretap Act, "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). "Content" information "refers to the intended message conveyed by the communication" and is therefore distinct from "record" information, which relates to "the characteristics of the message that is generated in the course of the communication," such as a name, address, or the identity of a subscriber or customer. *See In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Here, the alleged "contents" at issue are vague references to Plaintiffs' self-proclaimed "PII and PHI." *See, e.g.*, Compl. ¶¶ 4, 9-11, 97, 116. The Complaint

also mentions record information such as IP addresses, cookie identifiers, device identifiers, and URLs (*id.* ¶¶ 9-11, 89), but no specific "content" allegedly collected from Plaintiff during his visits.

As a threshold matter, "the disclosure of browsing activity on a publicly available website that does not relate 'to the past, present or future physical or mental health or condition of an individual' is not actionable." *Nienaber*, 733 F. Supp. 3d at 1084 (internal quotation marks omitted); *see also Smith*, 745 F. App'x at 9 ("the connection between a person's browsing history [on a public hospital website] and his or her own state of health is too tenuous."); *Smith*, 262 F. Supp. 3d at 954-55 (same).

In *In re Facebook Internet Tracking Litig*., 140 F. Supp. 3d 922 (N.D. Cal. 2015), the court held that a URL sent to Meta by a user's browser does not qualify as "contents" of a "communication" under the Wiretap Act because it is nothing more than "record information regarding the characteristics of the message that is generated in the course of the communication." *Id*. at 935 (quoting *In re Zynga*, 750 F.3d at 1106-07). By definition, a URL does not convey the "meaning" of the communication with the host server; it simply identifies the location of the requested webpage on the Internet. *Id*. at 935-36. Likewise, in *In re Zynga*, the Ninth Circuit explained that even though a URL could disclose that a person viewed the "page of a gay support group," such URLs "function[] like an 'address,'" not "contents" of a

communication. 750 F.3d at 1107-08. Similarly, actions on a webpage (*e.g.*, button clicks, page navigation, and keystrokes (or search queries)) are record information, not contents. *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024).

Here, Plaintiff's Complaint fails to allege facts showing that the substance of her alleged communications to anyone at Billings Clinic have ever been transmitted to a third party. Plaintiff's threadbare conclusions that her "protected health information" and "personally identifiable information" are transmitted to third parties, Compl. ¶ 4, are bereft of facts and therefore insufficient as a matter of law. *See, e.g., Iqbal*, 556 U.S. at 678 (mere conclusions are insufficient); *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (rejecting conclusory allegations that the defendant "regularly and unlawfully shared highly confidential information"); *B.K.*, 721 F. Supp. 3d at 1064 (dismissing claim for failure "to allege what, if any, medical information or medical records were transmitted or disclosed").

Plaintiff does not allege she engaged in doctor-patient communications using the Website and she cannot because the extent of Plaintiff's interaction with the Website amounted to general usage like searching for services, requesting information, and researching providers. Compl. ¶¶ 225, 228. The limited allegations relating to Plaintiff's interactions with the Website show only that Plaintiff utilized

the Website's publicly available information and tools; but Plaintiff does not explain what information of *hers* was recorded or intercepted. *See generally* Complaint.

Accordingly, Plaintiff has not alleged a Wiretap Act claim.

### C. <u>Plaintiff Fails to State a Claim for Negligence (Count II).</u>

"To maintain an action in negligence, a plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted." *Creel v. Loy*, 524 F. Supp. 3d 1090, 1094 (D. Mont. 2021) (quoting *Peterson v. Eichhorn*, 344 Mont. 540, 546 (2008)). Because Plaintiff fails to establish each element, the Court should dismiss Count II.

First, "under Montana law, courts consider two factors when determining whether a duty exists: (1) 'whether the imposition of [a] duty comports with public policy' and (2) 'whether the defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff.'" *Mid Continent Cas. Co. v. Engelke*, 337 F. Supp. 3d 933, 946 (D. Mont. 2018), *aff'd*, 842 F. App'x 25 (9th Cir. 2020) (quotation omitted). To the extent Plaintiff's negligence claim is predicated upon HIPAA (*see, e.g.*, Compl. ¶¶ 99-118), "HIPAA itself provides no private right of action." *Garmon v. County of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016); *Warner v. Montana*, No. 9:19-cv-00103-DLC-KLD, 2019 WL 8754949, at *12 (D. Mont. Nov. 18, 2019), *report and recommendation adopted*, No. 9:19-cv-

00103- DLC-KLD, 2020 WL 1429850 (D. Mont. Mar. 24, 2020); *Towles v. Dzurenda*, 735 Fed. App'x. 440, 440 (9th Cir. 2018) (finding the district court properly dismissed claim alleging HIPAA violations because "there is no private right of action under the statute."). Accordingly, HIPAA cannot form the basis for any duty owed by Billings Clinic toward Plaintiff. The only other alleged duty here is for the "fiduciary duty of confidentiality by designing its data protection systems in a way to allow for a data breach." Compl. ¶ 302. While this is not a data breach case, courts in the Ninth Circuit have held that "enter[ing] into an arms-length business relationship" where "Plaintiffs entrusted Defendants with their confidential information as part of the relationship" is "insufficient to create a fiduciary duty." *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1146 (C.D. Cal. 2021); *see also In re U.S. Vision Data Breach Litig.*, 732 F. Supp. 3d 369, 376 (D.N.J. 2024) ("[A] conclusory statement that a 'medical relationship' exists is not, standing alone, enough to establish a fiduciary duty between the parties.") (collecting cases).

Even if Plaintiff had established any cognizable duty, she has failed to establish breach. Plaintiff has not pled facts showing that anyone's medical records, diagnosis, treatment, or medication has been disclosed to any third party. Plaintiff thus has not pled facts showing that, based on the circumstances of the case, she "was within the scope of risk created by the alleged negligence; [or] whether the defendant could have foreseen that the conduct could have resulted in injury to the

plaintiff." *Lokey v. Breuner*, 358 Mont. 8, 11 (2010). In virtually identical circumstances, a district court held that plaintiffs failed to plead facts showing that their private medical information was "wrongfully divulged and misused." *See B.K.*, 721 F. Supp. 3d at 1069, *on reconsideration in part*, No. 5:23-cv-02092-JGB-DTB, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024).

Plaintiff also does not plead facts showing how Billings Clinic shared information that can be used to readily identify her. For instance, Plaintiff fails to plead facts showing how any Pixel was configured such that PHI identifying her would have been disclosed. Plaintiff does not plead that her name, phone number, or any other identifying characteristic were disclosed, only an IP address, URLs, and device information. But as courts have noted, information such as an IP address does *not* constitute individually identifiable health information, or PHI, here. *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 800-804 (N.D. Tex. 2024); *Williams v. TMC Health*, No. 4:23-cv-00434-TUC-SHR, 2024 WL 4364150, at *7 (D. Ariz. Sept. 30, 2024).

Plaintiff also fails to allege any cognizable damages because she does not plead facts showing that she lost the opportunity to sell her information or that the value of her information was somehow diminished after it was allegedly collected by third parties. *In re Facebook*, 140 F. Supp. 3d at 930-31.

For failure to satisfy any of the elements of her negligence claim, Count II should be dismissed.

**D. <u>Plaintiff Fails to State a Claim for Unjust Enrichment (Count III).</u>**

To state a claim for unjust enrichment, the plaintiff must prove: "(1) a benefit was conferred upon the recipient by the claimant; (2) the recipient knew about or appreciated the benefit; and (3) the recipient accepted or retained the benefit under circumstances rendering it inequitable for the recipient to do so." *Quinn v. Meadow Lark Transp., Inc.*, No. 1:22-cv-00055-BLG-SPW-TJC, 2025 WL 2445530, at *14 (D. Mont. Aug. 8, 2025), *report and recommendation adopted*, No. 1:22-cv-00055-BLG-SPW-TJC, 2025 WL 2439138 (D. Mont. Aug. 25, 2025) (quotation omitted). Plaintiff's theory for her unjust enrichment claim is that because she and putative class members provided Billings Clinic with their "Private Information" and because Billings Clinic allegedly used that information to gain enhanced advertising services, Billings Clinic somehow unjustly retained benefits "at the expense of Plaintiff and Class Members . . . without providing any commensurate compensation." Compl. ¶¶ 308-10.

The U.S. District Court for the District of Montana rejected similar arguments in the data breach context (as have courts around the country), dismissing plaintiff's unjust enrichment claim because she failed to plausibly allege a material benefit conferred upon the defendant. *See Teeter v. Easterseals-Goodwill N. Rocky*

*Mountain, Inc.*, No. 4:22-cv-00096-GF-BMM, 2023 WL 2330241, at *6 (D. Mont. Mar. 2, 2023) (finding that although plaintiff alleged the value of her PII diminished, "[the defendant] received no material benefit from Teeter's PHI/PII."). Here, Plaintiff's unjust enrichment claim should be dismissed as well.

### E. <u>Plaintiff Fails to State a Claim for Violation of the MHCIA (Count IV).</u>

The MHCIA was enacted because the Legislature found "it [] in the best interest of the citizens of Montana to have certain requirements" governing "the use or release of health care information" in certain circumstances. MCA § 50-16-801.

MCA § 50-16-805 specifies that "[d]isclosure of information [is] allowed for certain purposes" and namely workers compensation, law enforcement purposes, mortality review, and department of justice reporting. *See, e.g.*, *Simms v. Schabacker*, 377 Mont. 278, 284–85 (2014) (noting that MCA § 50-16-805(2) "addresses those situations in which healthcare providers may disclose healthcare information for law enforcement purposes"). And in compliance with the processes laid out under MCA §§ 50-16-811 and 50-16-812, there are certain circumstances when health care information can be disclosed "pursuant to compulsory legal process or discovery." *See also Deming v. Ciox Health, LLC*, No. 20-35744, 2022 WL 605691, at *2 (9th Cir. Mar. 1, 2022) (holding that "the limitations of § 50-16-816 only apply in the context of a subpoena for patient records as described in § 50-

16-812(5)" because the Legislature crafted the provision in a specific manner and conspicuously omitted language that would have provided for broader applicability).

Here, Plaintiff fails to allege a violation of the MHCIA because she provides no facts showing that Billings Clinic failed to follow processes for providing information pursuant to workers compensation or law enforcement purposes, engaged in information blocking, or improperly disclosed information in a legal process. Instead, Plaintiff claims that Billings Clinic disclosed Plaintiff's and putative class members' "medical conditions they searched [on a public website], the providers whose profiles they viewed, the facility locations they selected, the free-text queries they entered, appointment-request activity, patient-portal login activity, prescription-refill activity, bill-payment activity, and the associated URLs, IP addresses, cookie identifiers, and device identifiers." Compl. ¶ 318. This alleged violation of the MHCIA was not contemplated by the Legislature and the Court should not read such a violation into the act.

Further, the type of information Plaintiff claims Billings Clinic disclosed (Compl. ¶ 318) does not comport with the MHCIA's definition of "Health care information," which "(a) is created or received by a health care provider; (b) relates to the past, present, or future physical or mental health or condition of an individual or to the past, present, or future payment for the provision of health care to the individual; and (c) identifies or with respect to which there is a reasonable basis to

believe the information can be used to identify the individual." MCA § 50-16-803; *see also Nienaber*, 733 F. Supp. 3d at 1084 (the disclosure of browsing activity on a publicly available website does not necessarily relate to the past, present or future physical or mental health or condition of an individual); *accord*. *Am. Hosp. Assn.*, 738 F. Supp. 3d at 803 (*supra*).

Plaintiff's MHCIA claim should be dismissed for failure to state a recognized violation of the Act.

**F. Plaintiff Fails to State a Claim for Invasion of Privacy (Count V).**

To prevail on an invasion of privacy claim, a plaintiff must prove: (1) an intentional intrusion into a private place, conversation, or matter by the defendant, (2) in a manner highly offensive to a reasonable person, and (3) damages. *Teeter*, 2023 WL 2330241, at *4 (citing *Medical Lab. Mgmt. Consultants v. ABC*, 306 F.3d 806, 812 (9th Cir. 2002)). Damages must also be identified. *Id.* Also, a plaintiff must allege facts establishing a "wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Mid-Century Ins. Co. v. Windfall, Inc.*, No. 9:15-cv-00146-M-DLC, 2016 WL 2992114, at *5 (D. Mont. May 23, 2016) (quoting *Deserly v. Dep't of Corr.*, 995 P.2d 972, 977 (Mont. 2000).

First, there was no "invasion" because the alleged invasion, if any, would have been carried out by a third party and is therefore not actionable against Billings

Clinic. *See Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 944 (N.D. Ill. 2023) ("*Kurowski I*"); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1088-89 (W.D. Wash. 2024) ("Because Plaintiff voluntarily shared her information with Defendant, there was no intrusion upon Plaintiff's solitude, seclusion, or private affairs by Defendant."); *see also TMC Health*, 2024 WL 4364150, at *7 (same holding). This Court should follow the *Kurowski*, *Nienaber,* and *TMC Health* courts' well-reasoned and instructive decisions.

Second, the tort of invasion of privacy only protects something for which the expectation of privacy is "objectively reasonable." *Prather v. Bank of Am., N.A.*, No. 9:15-cv-00163-M-DLC, 2017 WL 1929474, at *3-4 (D. Mont. May 9, 2017) (citing *Mortensen v. Bresnan Commc'n, L.L.C.*, No. 1:10-cv-00013-BLG-RFC, 2010 WL 5140454, at *5 (D. Mont. Dec. 13, 2010)). Plaintiff has not pled facts showing that, merely by installing routine analytics technologies on its public Website, Billings Clinic "intentionally" intruded into Plaintiff's privacy in an objectively unreasonable manner. In fact, Plaintiff's Complaint demonstrates that Billings Clinic explicitly disclosed the existence of tracking technologies on its Website via the privacy policy, which states that Billings Clinic "collect[s] and log[s] the IP address of all visitors to [the] Site … [Billings Clinic] may sell, share, or rent this aggregate information to third parties …. Billings Clinic uses 'cookies' on its websites and that Billings Clinic's 'sponsors and advertisers and their advertising servers [] may use

… those cookies." Compl. ¶¶ 120-21. In such situations, district courts in Montana have found no objectively reasonable expectation of privacy. *See Mortensen v. Bresnan Commc'n, L.L.C.*, 2010 WL 5140454, at *5-6 (D. Mont. Dec. 13, 2010) ("Regardless of any subjective expectation of privacy, given Plaintiffs' notice of the monitoring and potential forwarding of their electronic activities to a third-party, they did not have an objectively reasonable expectation of privacy."); *Deering v. CenturyTel, Inc.*, No. 1:10-cv-00063-BLG-RFC, 2011 WL 1842859, at *2 (D. Mont. May 16, 2011) ("[T]here is no reasonable expectation of privacy when a plaintiff has been notified that his Internet activity may be forwarded to a third party to target him with advertisements.").

Moreover, the alleged information at issue includes IP addresses and URL browsing information, not medical communications or records. *See* Compl. Ex. A. As one district court held, "[d]ata and information that has been found insufficiently personal includes mouse movements, clicks, keystrokes, keywords, URLs of web pages visited, product preferences, interactions on a website, search words typed into a search bar, user/device identifiers, anonymized data, product selections added to a shopping cart, and website browsing activities." *Saeedy v. Microsoft Corp.*, No. 2:23-cv-01104-BJR, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023); *see also Am. Hosp. Ass'n*, 738 F. Supp. 3d at 800-4; *Hubbard v. Google LLC*, No. 5:19-cv-07016-SVK, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary

internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much.") (emphasis in original).

The final element of this claim is that the intrusion be conducted in such a manner as to cause "outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Mid-Century Ins. Co.*, 2016 WL 2992114, at *5. There is no offensive and objectionable invasion of privacy alleged here. Courts that have analyzed these issues have repeatedly held that similar data collection and disclosure practices to third parties constitute "routine commercial behavior" and are thus not a "highly offensive" or serious intrusion of privacy. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of users' browsing history to third parties was not highly offensive); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (same); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1060, 1063 (N.D. Cal. 2012) (disclosures of unique device identification number, personal data, and geolocation information without consent were not an egregious breach of social norms). This Court should similarly hold that Plaintiff has not pled facts sufficient to establish a serious invasion of privacy.

### G. Plaintiff Fails to State a Claim for Negligence *Per Se* (Count VI).

"To establish negligence per se in Montana, a plaintiff must prove five elements; (1) the defendant violated a particular statute; (2) the statute was enacted to protect a specific class of persons; (3) the plaintiff is a member of that class; (4) the plaintiff's injury is the sort the statute was enacted to prevent; and (5) the statute was intended to regulate a member of defendant's class." *Mid Continent Cas. Co. v. Engelke*, 337 F. Supp. 3d 933, 941 (D. Mont. 2018), *aff'd*, 842 F. App'x 25 (9th Cir. 2020). "Additionally, the statute allegedly violated must provide for a private right of action." *See Spreadbury v. Bitterroot Pub. Libr.*, No. 9:11-cv-00064-M-DWM-JCL, 2011 WL 4639917, at *7 (D. Mont. July 28, 2011), *report and recommendation adopted*, No. 9:11-cv-00064-M-DWM-JCL, 2011 WL 4708044 (D. Mont. Oct. 4, 2011).

Here, Plaintiff rests her negligence per se claims on purported violations of HIPAA, MHCIA, and Mont. Code Ann. § 46-4-301. But HIPAA does not provide for a private right of action and thus cannot serve as the basis for a negligence *per se* claim. Mont. Code Ann. § 46-4-301 pertains to the issuance of subpoenas by prosecutors and does not pertain to this matter at all. And the MHCIA relates to certain parameters for disclosure of health care information by health care providers in specific areas (outlined *supra*). Plaintiff makes no claim and states no fact to support an allegation that Billings Clinic failed to comply with any section of the

MHCIA to substantiate her negligence *per se* claim. Indeed, Plaintiff acknowledges that "Plaintiff pleads negligence per se not as a private right of action under Montana statutory authorities." Compl. ¶ 349. Accordingly, Count VI should be dismissed.

### H. Plaintiff Fails to State a Claim for Violation of Montana's Constitutional Right to Privacy (Count VII).

The Montana Supreme "Court explicitly held that 'the privacy section of the Montana Constitution contemplates privacy invasion by state action only.'" *Miller v. Great Falls Athletic Club, LLC*, 357 Mont. 562, at *1 (2010) (quoting *State v. Long,* 216 Mont. 65, 71 (1985). Because this is not a state action and Billings Clinic is not a state actor, Count VII fails as a matter of law and should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Billings Clinic respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Class Action Complaint as set forth herein, without leave to amend.

Dated 16th day of September, 2026.

Respectfully submitted,

CROWLEY FLECK PLLP

*/s/ Pamela C. Garman*
Pamela C. Garman
490 N. 31st Street, Ste 500
Billings, MT 59103-2529
pgarman@crowleyfleck.com

BAKER & HOSTETLER LLP

Keeley O. Cronin
Paul Karlsgodt (*pro hac vice* forthcoming)
1801 California St. Ste. 4400
Denver, Colorado 80202
Tel: (303) 861-0600
Fax: (303) 861-7805
Emails: kcronin@bakerlaw.com
pkarlsgodt@bakerlaw.com

Alexander Vitruk (*pro hac vice* forthcoming)
999 3rd Avenue, Suite 3900
Seattle, Washington 98104
Tel: (206) 566-7092
Fax: (206) 624-7317
Email:avitruk@bakerlaw.com

*Attorneys for Defendant Billings Clinic*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d), I certify that the above brief is printed with proportionately spaced Times New Roman text typeface of 14 points; is double-spaced, and the word count, calculated by Microsoft Office Word, is 6,483 words, excluding the caption, signature block, certificate of service, and certificate of compliance.

*/s/ Pamela C. Garman*
Crowley Fleck PLLP

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of September, 2026, I electronically transmitted the foregoing document to the Clerk of the Court using the CM/ECF system which will send notification to all ECF Registrants in this action.

*/s/ Pamela C. Garman*
Crowley Fleck PLLP